[Civ. No. 5834. Second Appellate District, Division Two.—November 16, 1927.]

In the Matter of the Estate of BENIGNO BARREIRO, Deceased.

Wright & McKee and Lewis J. Utt for Appellants.

Herman Freese and Stephen Connell for Respondent.

THOMPSON, J.—This appeal is from a decree of partial distribution by the three minor children of the deceased and by the executor of the last will and testament of Benigno Barreiro, deceased. The respondent is the mother of the children and the divorced wife of decedent. She petitioned the court for a partial distribution of the estate, which the court ordered. By the will of decedent all of his estate was devised and bequeathed to the three children. The respondent asserted her right to take one-half of the estate, claiming that the property was the community property of herself and deceased. By stipulation of all the parties all the property of the estate, other than 1,000 shares of the capital stock of a Mexican corporation known as the Compania de Inversiones de la Baja California, S. A., appraised at $500,000, was expressly excluded from the scope of the application and the hearing. The court found that of the 1,000 shares, one-fifth, or $100,000 worth, was separate property, and that the remainder was community property. In arriving at this result the court found that two parcels of real property which had been owned by the deceased at the time of his marriage and continuously thereafter until transferred to the company, in exchange for a portion of the capital stock, had during the marriage relation been improved with buildings, and that due to the fact that ''no evidence or proof'' was ''adduced establishing or showing that said improvements were made or paid for with the separate funds of said decedent'' the improvements were presumptively community property. The improvements so found to partake of the character of community were valued at the sum of $55,000.

Appellants contend that the improvements as a matter of law constitute a part of the separate estate of decedent, and that this court should either modify the decree by adding to the sum of $100,000 the sum of $55,000 or instruct the trial court to amend the conclusions of law and the decree to the same effect.

Inasmuch as appellants assert that fixtures attached to the separate real property take on the character of the land and become separate estate also, the respondent argues that they are not seeking to recover any part of the realty, but only seeking to have distributed to the widow one-half of the portion of the capital stock of the company found

to be community; that this proportion should be fixed in accordance with the value of the separate and community estate turned over to the company for the capital stock. This argument of respondent is unsound for the reason that the character of the capital stock, whether separate or community, is determined by the character of the property which purchased the stock. We do not mean to say that a fund might not be traced through this medium to its destination, and the character of the property finally acquired be determined according to the facts, because such is not the case before us, but only that in the instant case no character is given to the property by proof other than that the land was separate property. We therefore have but one question to settle. ██ Were the improvements presumptively community property? In McKay's Community Property, section 347, we read: "Such improvements are incorporated into it [the land] and follow the title to it. They are not a thing apart, nor does the making of them create any form of title or interest in the land. This is the rule of both the civil and the common law. The character of the land as separate or common determines the ownership of the improvements." The claim of respondent is effectually concluded by the language of the supreme court in the case of *Shaw* v. *Bernal*, 163 Cal. 262, 267 [124 Pac. 1012]: "If we assume that all the money expended in constructing the house on this land was community property, it still remains that both the land and the building constructed thereon constituted separate property of the wife. A similar question was early decided by this court. The conveyance of land purchased with community funds had been by express direction of the husband, made to the wife, with the intent on his part to make to her a gift of the property. Subsequently the husband from community funds constructed a dwelling-house, thereon. The court said: 'The question is, who was the owner of the house when it was built under those circumstances.' It admits of only one answer—the owner of the lot was also the owner of the house. It formed a part of the real estate, and the title to the home is necessarily included in the title to the lot on which it is erected, in the absence of an agreement sufficient to pass the title to the house alone. (*Peck* v. *Brummagim*, 31 Cal. 440, 448 [89 Am. Dec. 195].)

This holding is in accord with the general rule stated in 21 Cyc. 1648, as follows: 'Improvements made during marriage on the separate property of either husband or wife, although with community funds, will as a general rule belong to the spouse owning the separate property.' An agreement between the parties may produce a different result as is implied in the above quotation from *Peck* v. *Brummagim;* creditors of the husband may perhaps establish a claim to improvements so constructed where they can show that the expenditure therefor was a fraud upon them (see *Maddox* v. *Summerlin,* 92 Tex. 483 [49 S. W. 1033, 50 S. W. 567]); the wife might reach as community property a building erected by the husband from community funds on his separate property, for the very purpose of fraudulently depriving her of her interest therein (see *Smith* v. *Smith,* 12 Cal. 216 [73 Am. Dec. 533]); but it is clearly the rule that where a husband deliberately constructs from community funds a building upon the separate property of his wife, in the absence of any sufficient agreement or undertaking to the contrary, as between him and her the title to the building follows the title to the land and is separate property of the wife, and neither he nor the marital partnership has any title to any portion of the property, either land or building. *The authorities hold that the most that the marital partnership may acquire under such circumstances, if anything, is a right to reimbursement to the extent of the value added to the property by the improvements.* Whether the right to reimbursement exists in such cases is a question not at all involved in this proceeding and we express no opinion thereon. In support of the views we have expressed are the following authorities, in addition to those already cited: McKay on Community Property, sec. 249; Ballinger on Community Property, note to section 19; 6 American and English Encyclopedia of Law (2d ed.) 324; *Rice* v. *Rice,* 21 Tex. 58; *Maddox* v. *Summerlin,* 92 Tex. 482 [49 S. W. 1033, 50 S. W. 567]; *Humphreys* v. *Newman,* 51 Me. 40." (Italics ours.) To the same effect, see *Carlson* v. *Carlson,* 10 Cal. App. 300 [101 Pac. 923], and *Smith* v. *Smith,* 47 Cal. App. 650, 653, [191 Pac. 60].

It follows, since there is no question of fact to be determined that the decree should be modified by adding to the

separate property the sum of $55,000 and subtracting a like amount from the community property, and the trial court is instructed to modify its decree accordingly, and as so modified it is affirmed.

Works, P. J., and Collier, J., *pro tem.*, concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 12, 1928.

All the Justices concurred.