Jean **RENOIR** and Dido Freire Renoir,
Petitioners,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 18237.

United States Court of Appeals
Ninth Circuit.

Aug. 7, 1963.

J. Everett Blum, Beverly Hills, Cal., for petitioners.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Benjamin M. Parker, and Philip B. Heymann, Attys., Tax Div., Dept. of Justice, Washington, D. C., for respondent.

Before CHAMBERS, HAMLEY and HAMLIN, Circuit Judges.

HAMLIN, Circuit Judge.

Jean and Dido Renoir filed a petition with this court to review a decision of the Tax Court (37 T.C. 1180) involving their income tax liability for the years 1956 and 1957.

The facts are not in dispute. Petitioners arrived in France on October 1, 1953, and remained continuously in Europe until July 15, 1956. While in Europe, Jean Renoir performed personal services as a motion picture director and writer, and in 1956 received $35,000 as partial compensation for those services. In 1957 he received $10,000 as additional compensation for the services rendered while he was in Europe.

Petitioners filed joint income tax returns for their taxable years 1956 and 1957 on the calendar year and "cash receipts and disbursements basis." In their 1956 income tax return, they excluded from gross income the $35,000 which Jean had received in 1956 and in their 1957 return they excluded the $10,-000 which he had received in 1957 for services performed in Europe.

The Tax Court held that petitioners' allowable exclusion from gross income for their taxable year 1956 was only

$12,732.24 and not $35,000. This sum represents $^{233}/_{366}$ths of $20,000, the numerator representing the number of days in petitioners' taxable year 1956 during which Jean was present in foreign countries and the denominator representing the maximum amount of excludable income in any taxable year allowed by section 911(a) (2) of the Internal Revenue Code of 1954. The Tax Court also held that petitioners' allowable exclusion from gross income for their taxable year 1957 was zero, since no part of petitioners' taxable year 1957 fell within the qualification period of eighteen consecutive months abroad provided for in section 911(a) (2).

The two questions presented on this appeal are: (1) Do the words "taxable year" appearing in section 911(a) (2) of the Internal Revenue Code of 1954 mean the year in which the services were performed or the year in which the income attributable to the services was received?; and (2) Is each petitioner entitled to the exclusion provided for in section 911(a) (2) by reason of their being husband and wife domiciled in and residents of California, a community property state?

■■■ During the taxable years here in question, section 911(a) (2) provided in pertinent part for the following exclusion from gross income:

"In the case of an individual citizen of the United States, who during any period of 18 consecutive months is present in a foreign country or countries during at least 510 full days in such period, *amounts received from sources without the United States* * * * if such amounts constitute earned income * * * attributable to such period; * * *. If the 18-month period includes the entire *taxable year*, the amount excluded under this paragraph * * * shall not exceed $20,000. If the 18-month period does not include the entire taxable year, the amount excluded under

this paragraph for such taxable year shall not exceed an amount which bears the same ratio to $20,000 as the number of days in the part of the taxable year within the 18-month period bears to the total number of days in such year." [Emphasis supplied]

In Ladd v. Riddell,[1] we recently held that "taxable year" for the purpose of this statute refers to the year in which income is received in the case of a taxpayer who reports his income on a cash receipts and disbursements basis. Counsel for petitioners in this case, who also argued the Ladd case before this court, concedes that the same arguments that were advanced unsuccessfully in favor of the taxpayer in Ladd are again being presented to this court. Petitioners request, however, that we overrule the Ladd opinion. We have re-examined our opinion in that case and decline to overrule. Accordingly, we hold that the Tax Court was correct in allowing petitioners an exclusion of only $12,732.24 for the taxable year 1956 and in disallowing any exclusion for the taxable year 1957.

■ Petitioners next contend that each petitioner is entitled to exclude up to $20,000 of the income received in each of the taxable years here involved by reason of the fact that they are husband and wife domiciled in California, a community property state and that therefore one-half of the earned income of either spouse constitutes earned income of each spouse. Respondent concedes that the money was community property, but argues that there is no language in the statute that would support the contention that the limited exclusion from gross income expressly written into section 911 (a) (2) may be doubled in a joint income tax return of a husband and wife, solely because they are domiciled in a community property state. We agree with respondent. The statute provides that in any taxable year only an "amount" which "shall not exceed $20,000" may be excluded from "amounts received from

sources without the United States." We think that it was the intent of Congress that there be one exclusion in any one taxable year from the total amount received abroad in that year, regardless of how that amount is subsequently reported by the individual taxpayers involved.

Further, we agree with the Tax Court that in the absence of a "clear-cut statutory mandate" an intention should not be attributed to Congress to grant preferential treatment to taxpayers who live in community property states.[2] The statute certainly does not expressly provide for such disparate treatment; therefore we do not feel that petitioners have sustained their burden of proving entitlement to a double exclusion.[3]

The decision of the Tax Court is affirmed.

2. "A desire for equality among taxpayers is to be attributed to Congress, rather than the reverse." (Colgate-Palmolive-Peet Co. v. United States, 320 U.S. 422, 425, 64 S.Ct. 227, 230, 88 L.Ed. 143 (1943)). "A cardinal principle of Congress in its tax scheme is uniformity, as far as may be." (United States v. Gilbert Associates, 345 U.S. 361, 364, 73 S.Ct. 701, 703, 97 L.Ed. 1071 (1953)).

3. The authorities cited by petitioners in support of their position are inapposite and stand merely for the proposition that the "division of income on the community property basis does not alter the exempt character of *income entitled to exemption*." [Emphasis supplied] (see, *e. g.*, Rev.Rul. 55-246, 1955-1 C.B. 92). This proposition assumes that certain income has been established as having an exempt character. Here the very question was how much of the income in question was entitled to be excluded from gross income.